# BRENDAN CHAO
## ATTORNEY AND COUNSELLOR AT LAW

50 MERRICK ROAD, SUITE 200
ROCKVILLE CENTRE, N.Y. 11570
(516) 466-2033
FACSIMILE: (516) 466-2007

E-MAIL: bchao@bchaolaw.com

July 13, 2020

**VIA MAIL AND EMAIL – roger.briton@jacksonlewis.com**

Roger H. Briton, Esq.
JACKSON LEWIS, P.C.
58 South Service Road, Suite 250
Melville, N.Y. 11747

      Re:   Joseph Smith v. Brookhaven National Laboratory, et al.
             Notice of Appeal
             Civil Case No. 18-CV-03443 (SJF)(ARL)

Dear Mr. Briton:

    Enclosed is Plaintiff's Notice of Appeal with Decisions.

    Please contact the undersigned if you have any questions.

                                Sincerely yours,

                                Brendan Chao

BC/aa

Cc:   Michael Bosso, Esq.           **VIA MAIL AND EMAIL – mdb@cohmlaw.com**
       COLLERAN O'HARA
         & MILLS, L.L.P.
       100 Crossway Park Drive West, Suite 200
       Woodbury, N.Y. 11797

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH SMITH,

                      Plaintiff,      :  18-CV-03443 (SJF)(ARL)

   -against-

BROOKHAVEN SCIENCE ASSOCIATES, LLC d/b/a  :  NOTICE OF APPEAL
BROOKHAVEN NATIONAL LABORATORY,
INTERNATIONAL BROTHERHOOD OF ELECTRICAL :
WORKERS – LOCAL 2230, JOSEPH PAGANO, JOSEPH:
S. TRIOLO, JR., CHRIS J. TSCHINKEL, CHRIS G.
LUONI AND MICHAEL J. KEATING,

                    Defendants.
------------------------------------------------------------------X

        PLEASE TAKE NOTICE that Plaintiff appeals to the United States Court of Appeals for the Second Circuit from each and every part of the District Court's Memorandum Opinions and Orders, entered on March 20, 2020 and on July 7, 2020.

Dated: July 13, 2020
       Rockville Centre, N.Y.

                                                  BRENDAN CHAO
                                                  Attorney & Counsellor at Law

                                                  By: _____

                                                  Brendan Chao (BC8811)
                                                  Attorney for Plaintiff
                                                  50 Merrick Road, Suite 200
                                                  Rockville Centre, N.Y. 11570
                                                  (516) 466-2033

To:    Roger H. Briton, Esq.    VIA MAIL AND EMAIL – roger.briton@jacksonlewis.com
Henry S. Shapiro, Esq.
JACKSON LEWIS, P.C.
Attorneys for Defendants
Brookhaven Science Associates, LLC
Joseph Pagano, Joseph S. Triolo, Jr.,
Chris J. Tschinkel, Chris G. Luoni
and Michael J. Keating

Michael Bosso, Esq.    VIA MAIL AND EMAIL – mdb@cohmlaw.com
Attorney for IBEW

Case 2:18-cv-03443-GRB-ARL   Document 91   Filed 07/14/20   Page 4 of 16 PageID #: 2614
Case 2:18-cv-03443-GRB-ARL   Document 81   Filed 03/20/20   Page 1 of 2 PageID #: 2311

Page **1** of **2**

**UNITED STATES DISTRICT COURT**  
**EASTERN DISTRICT OF NEW YORK**

**Courtroom 840**  
DATE: 3/20/2020  
TIME: 4:42 p.m

BEFORE: GARY R. BROWN, U.S. DISTRICT JUDGE

CASE: **CV 18-3443 (GRB) Smith v. Brookhaven Science Associates, LLC et al**

TYPE OF CONFERENCE: PRE-MOTION

APPEARANCES:    Plaintiff: Brendan Chao

Defendant: Marc S. Wenger, Thomas Pearse Keane

COURT REPORTER/FTR#: 4:42-5:17 AT&T teleconference recording (conference start time 13:59)

**Motion for:**    summary judgment 75, 78  
**Movant:**    defendants

Case called.

☒    Counsel for all sides present.

☒    Pre-motion conference held.

☐ Parties to meet and confer and submit a schedule within 2 weeks.

☐ Motion Schedule set.    Motion served by:  
    Response served by:  
    Reply and all papers filed by:

☐    Discovery to proceed while motion is pending. Parties to contact Magistrate Judge assigned to the case to schedule an Initial Conference.

☐    Choose an item.

☒    Motion argued.

☐    Motion is Choose an item.(** No written decision**)

☒    Other: The Court deems the motion made. RULING: Summary judgment motions are granted. In addition to the reasons set forth on the record, the Court notes that plaintiff concedes in paragraph 9 of its Rule 56.1 statement response to defendants Brookhaven, et al., that the outside investigator's report "determined that Plaintiff was an immediate threat to his coworkers." So, for all of the reasons set forth, summary judgment is granted as to the claim of breach of collective bargaining agreement against the employer and the claim of inadequate representation against the union. As noted on the record, the Court declines to exercise supplemental jurisdiction over the state law defamation claims, which are dismissed without prejudice to refiling, if appropriate. The Clerk is directed to enter judgment and close this case.

Case 2:18-cv-03443-GRB-ARL   Document 91   Filed 07/14/20   Page 5 of 16 PageID #: 2615
Case 2:18-cv-03443-GRB-ARL   Document 81   Filed 03/20/20   Page 2 of 2 PageID #: 2312

Page **2** of **2**

☐   The parties are to submit order on notice to all parties.

☐   Settlement discussed. Choose an item.

☐   Jury Selection and trial set for:
    Joint pretrial order due by:

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JOSEPH SMITH,

                Plaintiff,

                                                  **MEMORANDUM &**
                                                  **ORDER**
   v.                                                CV 18-3443 (GRB)(ARL)

BROOKHAVEN SCIENCE ASSOCIATES, LLC,
d/b/a BROOKHAVEN NATIONAL
LABORATORY, INTERNATIONAL
BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL 2230, JOSEPH PAGANO,
JOSEPH S. TRIOLO JR., CHRIS J. TSCHINKEL,
CHRIS G. LUONI, AND MICHAEL J. KEATING,

                Defendants.
------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

        Before the Court is plaintiff Joseph Smith's motion for reconsideration of the Court's March 20, 2020 ruling granting summary judgment in favor of all defendants on Smith's federal claims, and declining to exercise supplemental jurisdiction over his state claim. Docket Entry ("DE") 83. The Court grants plaintiff's motion for reconsideration, but upon careful review, the Court adheres to its ruling of March 20, 2020.

        This summary judgment motion is decided under the oft-repeated and well-understood standard for review for such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

        In short, this case involves plaintiff's discharge from a position at Brookhaven National Laboratory following multiple reports that plaintiff has made threats of harm as against coworkers including threats that he carried a knife and would use such weapon against his

1

coworkers based upon a variety of grievances. BNL's 56.1 Statement ¶¶ 10 & 37, DE 77; Pl.'s 56.1 Resp. to BNL ¶¶ 10 & 37, DE 78-1 (collectively "Pl.'s & BNL's 56.1 Statements"); Union's 56.1 Statement ¶ 11, DE 74-1; Pl.'s 56.1 Resp. to Union ¶ 11, DE 78-2 (collectively, "Pl.'s & Union's 56.1 Statements"). Defendants BNL and the Union conducted separate investigations into the conduct. Both the Union and an independent, outside investigator hired by the employer investigated these complaints, some of which were anonymous, and both determined that the complaints were credible. Pl.'s & BNL 56.1 Statements ¶ 36; Pl.'s & Union's 56.1 Statements ¶¶ 13, 55-56, 60; New Life Report 21, DE 80-5. As such, plaintiff was terminated from his position at Brookhaven National Laboratory without arbitration. Pl.'s & BNL's 56.1 Statements ¶¶ 57, 74; Pl.'s & Union's 56.1 Statements ¶¶ 25-26, 60-64.

This action followed. Motions to dismiss were denied by Judge Feuerstein, well before transfer of this action to the undersigned. Order dated Sept. 9, 2019. All parties were afforded the opportunity to conduct and complete discovery. Order dated Oct. 9, 2019. The parties submitted detailed pre-motion letters which set forth their summary judgment positions along with Rule 56.1 statements. DE 74 to 80. At the outset of oral argument,[1] the Court reiterated its individual rule providing that the Court reserved the right to construe the letters, 56.1 statements and oral argument as the motion itself, encouraging counsel to provide any arguments they wished to raise. DE 84 at 3. Following oral argument, the Court provided a detailed oral ruling granting summary judgment in favor of defendants. *Id.* at 21-26. That decision is incorporated herein by reference. In its motion to reconsider, plaintiff's counsel not only provides arguments in favor of reconsideration, but provides the full briefing that he had prepared in opposition to

---

[1] Because of the restrictions and limitations imposed by safety concerns associated with the COVID-19 pandemic, oral argument was conducted remotely via audio conference.

the motion to dismiss. DE 83. All of these materials and argument have been reviewed and considered.

Plaintiff now argues that summary judgment was improvidently granted for two reasons. First, plaintiff argues that he has a right under the Collective Bargaining Agreement ("CBA") to compel arbitration of his grievances. Second, he asserts that a question of fact remains as to whether the Union's conduct in not pursuing such arbitration was undertaken in bad faith. Mot. For Reconsideration, DE 83-1. Both arguments are rejected.

First, plaintiff's position that he had an independent right to compel arbitration under the CBA is foreclosed by Supreme Court case authority. *See Vaca v. Sipes*, 386 U.S. 171, 190 (1967). In 1967, the Supreme Court examined the argument that "every individual employee should have the right to have his grievance taken to arbitration." *Vaca*, 386 U.S. at 190. The Court held as follows:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement. In L.M.R.A. s 203(d), 61 Stat. 154, 29 U.S.C. s 173(d), Congress declared that 'Final adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement.' In providing for a grievance and arbitration procedure which gives the union discretion to supervise the grievance machinery and to invoke arbitration, the employer and the union contemplate that each will endeavor in good faith to settle grievances short of arbitration. . . .
>
> If the individual employee could compel arbitration of his grievance regardless of its merit, the settlement machinery provided by the contract would be substantially undermined, thus destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation. Moreover, under such a rule, a significantly greater number of grievances would proceed to arbitration. . . This would greatly increase the cost of the grievance machinery and could so overburden the arbitration process as to prevent it from functioning successfully.

3

*Id.* at 191-92 (lower case "s" in lieu of section sign as in original); *see also Amaty v. Int'l Org. of Masters, Mates & Pilots, ILA, AFL-CIO, Atl. Marine Grp.*, No. 3:18-CV-741(AWT), 2020 WL 3105529, at *7 (D. Conn. Feb. 25, 2020); *Ramlogan v. 1199 SEIU*, No. CV-11-0125 (SJF)(WDW), 2012 WL 113564, at *4 (E.D.N.Y. Jan. 11, 2012).

Second, as to plaintiff's second argument—that the facts in this case (including allegations of bad faith on the part of defendant International Brotherhood of Electrical Workers, Local 2230 ("Union"))—warrant characterizing this matter as one that falls into the "arbitrary, discriminatory, or in bad faith" union actions, this argument is entirely unpersuasive. *See Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010).[2] While the Court outlined its rationale in the oral decision, there are additional factors further justifying the imposition of summary judgment here.

Here, plaintiff can proffer no evidence to show that the employer breached the collective bargaining agreement because BNL had just and reasonable cause to terminate plaintiff. The CBA provided that BNL "shall not have the right to discharge an employee except for just and reasonable cause." Pl.'s & BNL's 56.1 Statements ¶ 11. BNL's disciplinary policy lists as "Dischargeable Behavior Violations": "[f]ighting or assaulting another person or intimidating, coercing or threatening any other employee for any reason' and 'unauthorized possession of

---

[2] Plaintiff also argues that the Court employed an incorrect negligence standard at oral argument. Mot. to Reconsider 2. That is incorrect. Case law plainly holds that "[a] district court's review of an alleged breach of a union's duty of fair representation is 'highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Felton v. Local Union 804, Int'l Brotherhood of Teamsters*, No. 17-CV-2309 (AMD)(RML), 2020 WL 3104048, at *2 (E.D.N.Y. June 11, 2020) (quotation omitted). Furthermore, "tactical errors are insufficient to show a breach of duty of representation; even negligence on the union's part does not give rise to a breach." *See Vaughn*, 604 F.3d at 709; *Felton*, 2020 WL 3104048, at *2. In this case, plaintiff has failed to proffer evidence from which a reasonable jury could conclude that the Union's conduct rises above negligence or tactical error and constitutes arbitrary, discriminatory or bad faith conduct.

4

weapon(s), explosives or other destructive materials on Laboratory property." Pl.'s & BNL's 56.1 Statements ¶¶ 13, 19.

It is undisputed that defendant Brookhaven Science Associates, LLC doing business as Brookhaven National Laboratory ("BNL") received two written complaints about threatening behavior by employees within the air conditioning unit where plaintiff worked. Pl.'s & BNL's 56.1 Statements ¶ 29; Pl.'s & Union's 56.1 Statements ¶ 3. In response, BNL retained an outside consultant, New Life HR Solutions, LLC ("New Life"), to investigate the anonymous complaints. Pl.'s & BNL's 56.1 Statements ¶ 32; Pl.'s & Union's 56.1 Statements ¶ 6. New Life's investigator, Jennifer Rivas, conducted the investigation, and interviewed multiple air conditioning mechanics, including plaintiff and defendants Joseph Pagano, Joseph S. Triolo Jr., Chris J. Tschinkel, Chris G. Luoni, and Michael J. Keating (collectively "Individual Defendants") on December 18, and 19, 2017.

During the New Life investigation, all Individual Defendants stated to Rivas that plaintiff had made threatening remarks, such as, "what do we do with liars? Liars should be nailed to the cross," "my knife is sharp," "you touch me again and I'll filet you," "I'd like to stab him up close and personal so he knows I did it," "I want to stab Bob McKay in the jugular so I could be up close and personal to see him bleed out." Pl.'s & BNL's 56.1 Statements ¶¶ 10 & 37; Pl.'s & Union's 56.1 Statements ¶ 11. That these threats were conveyed to New Life's investigator by five witnesses is undisputed. *Id.*; *see also* DE 84 at 18.

On December 19, 2017, Rivas reported plaintiff's alleged threats to BNL representatives. Pl.'s & BNL's 56.1 Statements ¶ 36; Pl.'s & Union's 56.1 Statements ¶ 13. On December 20, 2017, plaintiff was summoned to the office of Tom Roza, the production division manager and one of plaintiff's supervisors. Frank Raynor, the president of the Union, and Leonard Butera, the

5

head of the security division, were also present at the meeting. Pl.'s & BNL's 56.1 Statements ¶ 43; Pl.'s & Union's 56.1 Statements ¶¶ 14 & 16. Before the meeting, Butera searched plaintiff, and found a pocket knife in plaintiff's pocket, which knife plaintiff routinely carried to work. Pl.'s & BNL's 56.1 Statements ¶¶ 40-41; Pl.'s & Union's 56.1 Statements ¶ 15. That pocket knife was a Featherlight Hunter Knife of Alaska, and it had a three inch blade and the knife was slightly over seven inches at full extension. Pl.'s & BNL's 56.1 Statements ¶ 40.

At the meeting, plaintiff was questioned about the alleged threats to coworkers. Pl.'s & BNL's 56.1 Statements ¶¶ 44-45; Pl.'s & Union's 56.1 Statements ¶ 17. Plaintiff's keys and badge were confiscated. Pl.'s & BNL's 56.1 Statements ¶ 42.

During the meeting, plaintiff consented to a search of his car and locker at the advice of Raynor. Pl.'s & BNL's 56.1 Statements ¶ 47; Pl.'s & Union's 56.1 Statements ¶ 19. When BNL security guards arrived at plaintiff's car, plaintiff informed the security guard about a second knife in plaintiff's car. Pl.'s & BNL's 56.1 Statements ¶ 51; Pl.'s & Union's 56.1 Statement ¶ 20. The knife in the car was in a "box marked Knives of Alaska Xtreme Series," and had a "3 1/2 inch serrated blade." Pl.'s & BNL's 56.1 Statement ¶ 52. BNL confiscated both of plaintiff's knives. Pl.'s & BNL's 56.1 Statements ¶¶ 51-53; Pl.'s & Union's 56.1 Statements ¶¶ 20-22. Plaintiff's locker was also searched, and BNL confiscated a magazine with information regarding an AR-15 rifle. Pl.'s & BNL's 56.1 Statements ¶ 54; Pl.'s & Union's 56.1 Statements ¶ 22. Following the search, two BNL security guards escorted plaintiff off BNL property. Pl.'s & BNL's 56.1 Statements ¶ 55; Pl.'s & Union's 56.1 Statements ¶ 23.

On December 27, 2017, a BNL representative left a phone message that plaintiff was fired. Pl.'s & BNL's 56.1 Statements ¶ 57; Pl.'s & Union's 56.1 Statements ¶¶ 25-26. Soon thereafter, BNL mailed plaintiff a Termination Notice, which stated that he violated BNL policy

by making threats of violence towards coworkers and supervisors, possessing unauthorized knives on BNL property, and being untruthful about his conduct and possession of weapons on the property. Pl.'s & BNL's 56.1 Statements ¶¶ 58-59. In the main, plaintiff does not contest the rationale for his termination; indeed the only quarrel with this justification is the assertion that "BNL has no policy regarding pocket knives on site." Pl.'s 56.1 Resp. to BNL ¶ 59. Clearly, this argument misses the point.

It is further undisputed that Raynor, the president of the Union, personally undertook the investigation of the termination on plaintiff's behalf. Pl.'s & BNL's 56.1 Statements ¶ 70. Raynor filed a grievance after plaintiff's termination. Pl.'s & Union's 56.1 Statements ¶ 29. The Union repeatedly requested documentation from BNL about plaintiff's termination. Pl.'s & BNL 56.1 Statements ¶ 69; Pl.'s & Union's 56.1 Statements ¶¶ 31 & 44-45, 46, 49. The Union also met with BNL to discuss the grievance on plaintiff's behalf. Pl.'s & BNL's 56.1 Statements ¶ 69; Pl.'s & Union's 56.1 Statements ¶¶ 31 & 33. Raynor also met with multiple witnesses to investigate the threats. Pl.'s & Union's 56.1 Statements ¶ 39.

Both Raynor, who is the president of the Union, and Rivas, who is the New Life investigator hired by BNL, investigated the complaints and found them to be credible. Pl.'s & BNL 56.1 Statements ¶ 36; Pl.'s & Union's 56.1 Statements ¶¶ 13, 55-56, 60; New Life Report 21.

Plaintiff argues that the Union acted in bad faith because defendant Pagano, one of the anonymous complainants and a witness interviewed by the independent investigator, was a Union board member. Pl.'s & BNL's 56.1 Statements ¶¶ 31, 34-35, 71, 74; Pl.'s & Union's 56.1 Statements ¶ 5; New Life Report 11. In addition, plaintiff complains of certain purportedly incorrect information supplied by Raynor. *Compare* BNL's 56.1 Statement ¶ 71; Union's 56.1

7

Statement ¶ 39; Raynor Tr. 106:8-9, DE 80-15 *with* Baldassarre Decl. ¶¶ 7-9, DE 83-4; Caroll Decl. ¶¶ 6-7, DE 83-5; Klotz Decl. ¶¶ 6-8, DE 83-5. While interesting, the significance of these facts withers in the light of the record amassed by the independent investigator hired by the employer. In other words, notwithstanding plaintiff's complaints about Pagano and Raynor, it is beyond peradventure that the employer acted properly in terminating plaintiff based upon the undisputed record evidence. And, under the law, if plaintiff's termination was appropriate, then plaintiff cannot maintain an action against the employer or the Union.

As one court summarized,

> Section 301 of the LMRA, 29 U.S.C. § 185(a), governs [plaintiff's] claim that [defendant employer] breached the CBA when it terminated his employment. *See Vaca v. Sipes*, 386 U.S. 171, 183 (1967). His claim against the Union that it breached its duty of fair representation ("DFR") "is implied under the scheme of the NLRA." *Carrion v. Enter. Ass'n*, 227 F.3d 29, 33 (2d Cir. 2000). "The duty of fair representation exists because it is the policy of the National Labor Relations Act to allow a single labor organization to represent collectively the interests of all employees within a unit, thereby depriving individuals in the unit of the ability to bargain individually or to select a minority union as their representative." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 n.14 (1983). When the union fails to fairly represent a member in the grievance or arbitration procedures of the CBA, "an employee may bring suit against both the employer and the union, notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* This is known as a hybrid § 301/DFR claim.
>
> "To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food*, 237 F.3d 174, 178 (2d Cir. 2001). "The employee may sue the employer, the union, or both . . .; to prevail the employee 'must not only show that [his] discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union.'" *Carrion*, 227 F.3d at 33 (quoting *DelCostello*, 462 U.S. at 165). That is, "the case [the plaintiff] must prove [against the union and the employer] is the same whether he sues one, the other, or both." *DelCostello*, 462 U.S. at 165. Thus, if a union member fails to establish a breach of the DFR by the union, then the court need not address the employer's breach of the CBA. *See White*, 237 F.3d at 183 & n.13. "The converse is also true--that is, in a hybrid claim, if the employer is not liable to the employee, neither is the union." *Acosta v. Potter*, 410 F. Supp. 2d 298, 309 (S.D.N.Y. 2006).

*Amaty v. Int'l Org. of Masters, Mates & Pilots, ILA, AFL-CIO, Atl. Marine Grp.*, No. 3:18-CV-741 (AWT), 2020 WL 3105529, at *5 (D. Conn. Feb. 25, 2020).

There can, of course, be little argument that threats of violence against coworkers can provide "just cause" for termination of employee. *See, e.g., Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 166 (2d Cir. 2006) (upholding summary judgment in dismissing discrimination lawsuit as threats not a pretext); *see also* Pl.'s & BNL's 56.1 Statements ¶¶ 13, 19. His bringing weapons to the facility provides a separate ground for termination. *Davis v. FedEx Ground Package Sys.*, 2017 WL 1239594, at *5 (E.D.N.Y. Mar. 31, 2017)("employer had a non-discriminatory, non-pretextual reason to terminate plaintiff's employment—that is, her violation of FedEx's workplace policy prohibiting weapons at work, when she brought a knife to work"); *see also* Pl.'s & BNL's 56.1 Statements ¶ 13. Together, the undisputed evidence of threats of violence and the discovery of weapons brought to the workplace indisputably establish "just cause" for his termination under law and the dictates of common sense.

Therefore, plaintiff has proffered no evidence to show that the employer breached the collective bargaining agreement because the employer had just and reasonable cause to terminate plaintiff. Because the employer is not liable to the employee, neither is the Union. *Amaty*, 2020 WL 3105529, at *5 (citing *Acosta*, 410 F. Supp. 2d at 309).

## CONCLUSION

Based on the foregoing, the Court grants the motion for reconsideration, but adheres to the original decision in the March 20, 2020 ruling.

**SO ORDERED.**

Dated: Central Islip, New York
July 7, 2020

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOSEPH SMITH,

                Plaintiff,                      18-CV-03443 (SJF)(ARL)

      -against-

BROOKHAVEN SCIENCE ASSOCIATES, LLC d/b/a    AFFIRMATION OF SERVICE
BROOKHAVEN NATIONAL LABORATORY,
INTERNATIONAL BROTHERHOOD OF ELECTRICAL
WORKERS – LOCAL 2230, JOSEPH PAGANO, JOSEPH
S. TRIOLO, JR., CHRIS J. TSCHINKEL, CHRIS G.
LUONI AND MICHAEL J. KEATING,

                Defendants.
------------------------------------------------------------------X

## AFFIRMATION OF SERVICE

      I, Brendan Chao, hereby affirm that on July 13, 2020, I caused to be served via mail and email the Notice of Appeal on Defendants' attorneys at the below addresses:

Roger H. Briton, Esq.        VIA MAIL AND EMAIL – roger.briton@jacksonlewis.com
Henry S. Shapiro, Esq.
JACKSON LEWIS, P.C.
Attorneys for Defendants
Brookhaven Science Associates, LLC
Joseph Pagano, Joseph S. Triolo, Jr.,
Chris J. Tschinkel, Chris G. Luoni
and Michael J. Keating

Michael Bosso, Esq.        VIA MAIL AND EMAIL – mdb@cohmlaw.com
Attorney for Defendant IBEW

                                            BRENDAN CHAO
                                            Attorney & Counsellor at Law

                                            By: _____

                                            Brendan Chao (BC8811)
                                            Attorney for Plaintiff
                                            50 Merrick Road, Suite 200
                                            Rockville Centre, N.Y. 11570
                                            (516) 466-2033